**KAMA'OLE TWO HUI**, a Hawai'i limited partnership, Plaintiff–Appellee, v. **AZIZ ENTERPRISES, INC.**, a Hawai'i corporation, doing business as **LA FAMILIA RESTAURANT**, Defendant–Appellant

NO. 15754

(CASE NO. W91–1976)

JUNE 29, 1993

BURNS, C.J., HEEN, AND WATANABE, JJ.

## OPINION OF THE COURT BY HEEN, J.

In this summary possession case, we consider (1) whether the lower court erred in entering a judgment and writ of possession (collectively, where appropriate, Judgment) in favor of Plaintiff–Appellee Kamaʻole Two Hui (Kamaʻole), a Hawaiʻi limited partnership; and (2) whether the lower court erred in denying Defendant–Appellant Aziz Enterprises, Inc.'s (Aziz) subsequent motion to accept deposit of rents into a court trust fund and to dissolve the writ of possession. We affirm.

### FACTS

Aziz and Kamaʻole were parties to a written lease for space in which Aziz, as Kamaʻole's tenant, operated a restaurant in Kihei, Maui. In May or June 1990, Aziz informed Kamaʻole that the Maui Fire Department had orally informed Aziz that the ventilation system at the restaurant violated the Maui Fire Code (MFC). The parties could not agree as to who was responsible for the repair of the ventilation system, and although Aziz presented plans for the repair to Kamaʻole for its approval, Kamaʻole never approved the plans. On August 5, 1991, the Maui Fire Department closed the restaurant down because of the MFC violation.

On August 13, 1991, Aziz called for arbitration of the disagreement over the parties' responsibilities pursuant to an arbitration clause in the lease.[1] Because Aziz believed that Kamaʻole

---

[1] The arbitration clause provided for arbitration of "any dispute, difference or question . . . touching this lease or the construction, meaning or effect of these presents or anything herein contained or the rights or liabilities of the parties hereto under these presents or otherwise[.]"

was responsible for the repairs and that the rent would be abated for the period of arbitration, Aziz stopped paying the lease rent to Kamaʻole. Instead, Aziz deposited checks with Aziz' attorney for the amount of the lease rents for August and September of 1991. In turn, Aziz' attorney informed Kamaʻole of the deposit of the uncashed checks. Aziz did pay to Kamaʻole the common area maintenance charges attributable to the premises.

On September 23, 1991, Kamaʻole filed the action below seeking (1) summary possession of the premises; (2) to require Aziz to pay the delinquent rents, the future rents, and the common area maintenance charges into a trust fund established by the court pursuant to Hawaiʻi Revised Statutes (HRS) § 666–21 (1985); and (3) judgment for, *inter alia*, the unpaid rent.

On the appointed day for hearing the return on the summary possession claim, Aziz' counsel advised the court that "there is a pending arbitration in this case for which the rent has been abated." The court stated that, if Aziz wanted to remain in possession, Aziz would have to pay the delinquent rents into the trust fund and entered an order (Deposit Order) requiring such payment by October 11, 1991. Aziz failed to make the payment on October 11, 1991, and the court entered a judgment and writ of possession on October 14, 1991. The writ was executed on October 16, 1991, and Kamaʻole regained possession of the leased premises.

On October 18, 1991, Aziz filed a Motion For Acceptance Of Deposit Of Rent And To Dissolve Writ Of Possession (Motion for Deposit), requesting the court to accept the late deposit of the rent in court and dissolve the writ of possession. The Motion for Deposit was denied in an order entered on October 22, 1991 (October 22, 1991 Order). On October 23, 1991, Aziz filed a motion for reconsideration (Motion for Reconsideration) of the October 22, 1991 Order. On October 25, 1991, Aziz filed a motion to stay all proceedings pursuant to arbitration and to set aside the Judgment and dissolve the writ of possession (Motion to Stay).

The Motion for Reconsideration was denied on November 5, 1991, and Aziz filed a notice of appeal (NOA) on November 12, 1991. On November 14, 1991, the lower court entered an order (November 14, 1991 Order) which stayed the proceedings to determine the amount of rent owed on the lease, but denied Aziz' request to set aside the Judgment and dissolve the writ of possession.[2] Defendant filed an amended notice of appeal (Amended NOA) on November 22, 1991.

## APPELLATE JURISDICTION

The NOA asserted that Aziz was appealing from the following actions of the court:

(1) [the Deposit Order]; (2) [the Judgment]; and (3) [the October 22, 1991 Order].

In the Amended NOA, Aziz asserted as further matters appealed from:

(a) the Order Denying Motion for Reconsideration filed on November 5, 1991, and (b) [the November 14, 1991 Order].

The question regarding appellate jurisdiction, which we are required to raise, *sua sponte*, *Simpson v. Dep't of Land and Natural Resources*, 8 Haw. App. 16, 20, 791 P.2d 1267, 1271 (1990), is whether the NOA ousted the lower court of jurisdiction to enter the November 14, 1991 Order.[3]

---

[2] At oral argument the parties informed this court that in fact all further proceedings, except the assumption of possession by Kamaʻole, have been suspended by the parties.

[3] In the answering brief, Kamaʻole asserts that the appeal is moot because Aziz failed to file a motion in the trial court to stay the issuance of the writ of possession pursuant to Rule 62(a), Hawaiʻi District Court Rules, and the premises have been leased to a third party. The lease to a third party was confirmed at oral argument in

As a general rule, the filing of a notice of appeal removes the case to the jurisdiction of the appellate court and deprives the lower court of jurisdiction to proceed further in the case, except for some matters. *MDG Supply, Inc. v. Diversified Inv., Inc.*, 51 Haw. 375, 463 P.2d 525 (1969), *cert. denied*, 400 U.S. 868, 91 S. Ct. 99, 27 L. Ed. 2d 108 (1970). Where, however, there is pending in the lower court a timely–filed motion which tolls the requisite period for filing a notice of appeal, a notice of appeal filed before the tolling motion is disposed of is a nullity, and a new notice of appeal must be filed after disposition of the motion. Rule 4(a)(4), Hawai'i Rules of Appellate Procedure (HRAP) (1985). Aziz' Motion to Stay was pending when the NOA was filed. However, the Motion to Stay was neither a tolling motion, *see Solarana v. Indus. Electronics, Inc.*, 50 Haw. 22, 428 P.2d 411 (1967), nor timely filed.[4]

When the NOA was filed, the lower court lost jurisdiction to act on the Motion to Stay. Therefore, the November 14, 1991 Order is not an appealable order, and its inclusion in the Amended NOA did not give this court jurisdiction to consider it on appeal.

---

this court by the parties. Kama'ole raised those same grounds in a motion to dismiss filed in the supreme court on January 13, 1992, which was denied on January 30, 1992. Consequently, we will not consider the issue again. *Azer v. The Courthouse Racquetball Corp.*, 9 Haw. App. 531, 533 n.2, 852 P.2d 75, 78 n.2 (1993); *see Schepp v. Hess*, 770 P.2d 34 (Okla. 1989) (no compelling reason or new argument presented in argument included in brief); *Condas v. Sugarhouse Mercantile Co.*, 14 Utah 2d 74, 377 P.2d 498 (1963) (full hearing held on motion to dismiss on briefs nearly identical to briefs on appeal). The issue discussed above was not raised in Kama'ole's motion to dismiss the appeal.

Aziz contended at oral argument in this court that the fact that the premises are leased to a third party should not render the issue moot, because if Aziz prevails on appeal, Aziz would be able to examine the circumstances of the re–lease for putative knowledge by the new lessee of Aziz' right to possession. We express no opinion on that proposition.

[4] The Motion for Stay was really anomalous as applied to the writ of possession, since the writ had already been executed and possession transferred.

(*See Chan v. Chan*, 7 Haw. App. 122, 748 P.2d 807 (1987), for a discussion of amended notices of appeal.)

However, since the November 5, 1991 Order was entered before the NOA was filed, the November 5, 1991 Order was properly included in the Amended NOA. The Amended NOA merely had the effect of adding the November 5, 1991 Order to the matters raised in the NOA. *See id.*, 7 Haw. App. at 129, 748 P.2d at 811–12.

Thus, the matters on appeal are items (1), (2), (3), and (a) above. However, since we find no merit in Aziz' assertions that the lower court erred in issuing the orders relating to (1)[5] and (a),[6] we will address only items (2) and (3).

## THE JUDGMENT

This case represents a clash between the policies of the summary possession statutes, HRS Chapter 666 (1985 and Supp. 1992), and the arbitration statutes, HRS Chapter 658 (1985 and Supp. 1992).

> [T]he statutory proceeding described in HRS [C]hapter 666 is meant to provide "a remedy to enable the landlord to obtain possession of leased premises without suffering the delay, loss and expense to which . . . he might be subjected [if he could only rely on the common law to

---

[5] Under Hawai'i Revised Statutes (HRS) § 666–21 (1985), the court is required in a landlord tenant dispute to enter an order for the deposit of rents. Thus, item (1), the Deposit Order, was correct.

[6] The Motion for Reconsideration cited in item (a) is the first time that the court's attention was specifically directed to the requirement of a stay under HRS § 658–5. In view of our determination that the Judgment subserved the policies of both the arbitration and the summary possession statutes, we conclude that the lower court did not abuse its discretion in refusing to reconsider the judgment. *Anderson v. Oceanic Properties, Inc.*, 3 Haw. App. 350, 650 P.2d 612 (1982).

remove a tenant who is] wrongfully holding over his term."

*Lum v. Sun*, 70 Haw. 288, 293, 769 P.2d 1091, 1094 (1989) (*quoting* 3A G. THOMPSON, COMMENTARIES ON THE MODERN LAW OF REAL PROPERTY § 1370, at 722) (J. Grimes Repl. 1981)).

The public policy of HRS Chapter 658 is to encourage arbitration as a means of settling disputes, thereby avoiding litigation. *Ass'n of Owners of Kukui Plaza v. Swinerton & Walberg Co.*, 68 Haw. 98, 107, 705 P.2d 28, 35 (1985).

Aziz essentially argues that when it informed the court that an arbitration proceeding had been started according to the lease, the court was required by HRS § 658–5 (1985)[7] to stay all the proceedings, including the summary possession claim. Kama'ole claims that Aziz had waived arbitration of the summary possession issue, because Aziz had not specifically demanded such arbitration either in its request for arbitration or when Aziz informed the court of the pending arbitration. We disagree with Kama'ole.

Waiver of the right to arbitration pursuant to a valid arbitration agreement will not be lightly inferred. *Id.* 68 Haw. at 108, 705 P.2d at 35. The record in this case does not indicate that Aziz voluntarily relinquished a known right. *Id.*

Aziz' actions in requesting arbitration pursuant to the lease, unilaterally undertaking to preserve the matter of abatement by

---

[7] HRS § 658–5 (1985) reads as follows:

**No trial if issue referable to arbitration.** If any action or proceeding is brought upon any issue referable to arbitration under an agreement in writing, the circuit court, upon being satisfied that the issue involved in the action or proceeding is referable to arbitration under such an agreement in writing, shall stay the trial of the action or proceeding until the arbitration has been had in accordance with the terms of the agreement, provided the applicant for the stay is not in default in proceeding with the arbitration.

making "payment" of the monthly rent to its own attorneys, and informing the court that an arbitration was pending, clearly indicate that it intended to rely on the arbitration clause. The fact that Aziz may (or may not) have been mistaken about (1) what was precisely being arbitrated; or (2) whether it was entitled to delay or abate payment of the rent on account of the arbitration; and (3) whether Kamaʻole's right to summary possession depended on the outcome of the arbitration, does not attenuate the clear inference of Aziz' reliance on the arbitration procedure. Nevertheless, Aziz' reliance does not assist it in this case.

When Aziz first informed the court about the arbitration, the court was required under HRS § 658–5 at least to satisfy itself that the issue of the abatement of the rent was referable to arbitration.[8] If so, the court was required to stay the proceeding. *See Gregg Kendall & Assoc. v. Kauhi*, 53 Haw. 88, 488 P.2d 136 (1971). However, the fact that the court did not do so was not reversible error.

When the court ordered Aziz to pay the rents into the trust fund, it was complying with the policy of HRS Chapter 666. At the same time, the court's action furthered the policies of HRS Chapter 658 by allowing arbitration to continue on any issue besides summary possession.[9] If Aziz had paid the rents into the trust fund as ordered, Aziz could have avoided the writ of possession, the arbitration could have proceeded and, depending on the extent and outcome of the arbitration, Aziz would have had the rent

---

[8] The request for arbitration is not a part of the record. Consequently, we do not know whether Aziz demanded arbitration of any other issues or whether the issues of abatement or summary possession may be necessarily included in the matter referred.

[9] The trial court has discretion in a summary possession case to sever the issue of a determinaton of the landlord's right to summary possession from other issues. *Lum v. Sun*, 70 Haw. 288, 769 P.2d 1091 (1989).

abated by the arbitrator or could have pressed its claim for such relief in proceedings following the arbitrators' decision. Since the court's decision was correct, we must affirm the Judgment. *State v. Taniguchi*, 72 Haw. 235, 815 P.2d 24 (1991).

## THE MOTION FOR DEPOSIT

The Motion for Deposit was tantamount to a motion for reconsideration of the Judgment and was addressed to the lower court's discretion. *See Simpson*, 8 Haw. App. at 21, 791 P.2d at 1272. In our view, the lower court did not abuse its discretion in denying the motion.

At the hearing on the Motion for Deposit, the parties did not present any evidence. Instead, they relied on their memoranda, affidavits, and oral argument.

Aziz filed the affidavit of Tony Habib (Habib), one of Aziz' officers. According to Habib, Aziz deposited checks to cover the August and September 1991 rent with its attorneys and paid Kama'ole the maintenance charges due for those months. Habib was served with the complaint and summons on October 1, 1991. At that time, Aziz' other officer was on the mainland. The return date on the summons was October 7, 1991. On October 5, 1991, Habib went to the mainland to be married. Before he left, Habib applied to a financial institution for a mortgage loan on his home to "obtain additional funds for cash flow and operational needs." On October 9, 1991, while he was still on the mainland, he was informed that the court was requiring him to deposit $26,001 in the trust fund and he unsuccessfully attempted to raise the money at that time. Upon his return on October 10, 1991, Habib continued with his attempts to raise money for the deposit. His efforts were unsuccessful and on October 14, 1991, he authorized Aziz' attorneys to offer to deposit $5,000 and to request additional time to raise the balance owed. The offer was declined. On October 16,

1991, he delivered checks in the amount of $26,001 to his attorney for deposit. However, he was advised that Kamaʻole would not accept the deposit and would take possession of the premises in accordance with the writ.

In response, Kamaʻole did not dispute the statements in Habib's affidavit. However, Kamaʻole claimed that the negotiations by Aziz were not conducted in good faith because the record shows that Aziz did not have the money to pay the rent. For example, although Habib claimed that Aziz had deposited checks in the amounts of $7,358 and $7,289 with Aziz' attorney to cover the rents for the months of August and September 1991, when Habib returned from the mainland Aziz could not raise sufficient funds which together with those two checks would cover the amount of the required deposit. Instead, Aziz offered to pay $5,000 on account and asked for additional time to raise the balance.

Kamaʻole filed an affidavit by Clifford Beppu (Beppu), Kamaʻole's agent. Beppu stated that, although Aziz did pay the maintenance charges for August and September, the payments were made at the end of those months and not on the first of the month when they were due.

The reasonable inference from Aziz' actions regarding the rental payments is that beginning in August of 1991, Aziz was in financial straits. Whether Aziz' financial condition was caused by the dispute over the repair of the ventilation system, we cannot tell. However, it is not unreasonable to further infer from the above facts that even when it "paid" the monthly rent to its attorneys, Aziz did not have funds to cover the checks and that Aziz continued to experience financial difficulty thereafter. The lower court could, therefore, reasonably conclude that Aziz' deposit of the August and September rental checks with its attorneys was as much caused by Aziz' financial straits as the claim of abatement, and that the writ of possession was necessary to protect Kamaʻole's interest in the premises in accordance with HRS Chapter 666. At that time no one could be certain how long the

arbitration would take and whether Aziz could continue to make deposits to the trust fund.

Accordingly, we conclude from the record that the lower court did not abuse its discretion in denying the motion.

## CONCLUSION

Affirmed.

*Robert A. Richardson* (*Caroline Peters Egli* with him on the briefs; Case & Lynch, of counsel) for defendant–appellant.

*Douglas H. Ige* (*Paul L. Horikawa* with him on the brief; Ing & Ige, of counsel) for plaintiff–appellee.